STATE of Texas ex rel. James EIDSON

v.

Hon. Billy John EDWARDS, Judge,
104th Judicial District of Texas.

No. 70260.

Court of Criminal Appeals of Texas,
En Banc.

June 27, 1990.

James M. Eidson, Abilene, for relator.

Randy Wilson, Abilene, for respondent.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

WHITE, Judge.

This is an original application for the writ of mandamus brought by Hon. James Eidson, the Criminal District Attorney for Taylor County. Relator Eidson seeks an order from this Court compelling the Hon. Billy John Edwards, Judge of the 104th Judicial District Court, to withdraw his order which disqualified Relator and his entire staff "in the prosecution of [trial court cause numbers 9212–B, 9213–B, and 9214–B, in which James Edward Clayton is the defendant]."

On original submission, we found the application to be moot and dismissed the cause in an unpublished opinion. *State ex rel. Eidson v. Edwards*, 764 S.W.2d 804 (Tex.Cr.App.1989).[1]

James Edward Clayton was charged with three counts of capital murder and one count of murder in connection with the violent death of Lori Michell Barrett occurring on or about September 17, 1987. In separate cause numbers, he was also charged with unlawful use of a vehicle and credit card abuse. In October, 1987, Ross Adair was appointed to represent Clayton. Adair, along with co-counsel Ken Leggett, represented Clayton until January, 1988. During Adair's tenure as Clayton's attorney, he interviewed Clayton and several possible witnesses, receiving confidential information. He had numerous discussions concerning trial and pre-trial strategy with his client and co-counsel. He acted as lead counsel at Clayton's examining trial. His tenure as a defense attorney in the case came to an end when Adair was appointed as Judge of the County Court at Law Number 2 for Taylor County in January, 1988.

Adair served as a judge until shortly after the primary election for the judgeship, about three months after his appointment to the bench. At that time, Adair resigned his position and approached Relator about employment on Relator's staff as an assistant prosecutor. Adair soon joined the staff, but at no time did he discuss the Clayton case with anyone in Relator's office. Several weeks before the motion to disqualify was filed, and after Relator remembered that Adair had previously represented Clayton, Relator gave Adair explicit instructions neither to discuss the case with anyone in the District Attorney's office, nor to allow anyone to discuss it in his presence. Adair did not participate in the prosecution of the case in any way, except for helping Relator brief the law on prosecutorial office disqualification when Clayton's attorneys filed the Motion to Disqualify the District Attorney as Prosecuting Attorney.[2]

Respondent, Hon. Billy Edwards, Presiding Judge of the 104th District Court of Taylor County, Texas, found that Adair had complied with Relator's instructions and that Adair had in no way revealed confidences to his associates in the District Attorney's office or participated in the prosecution in any improper way by helping to prepare for the disqualification hearing. Although Adair and Relator promised to continue Adair's disassociation with the prosecution, Respondent disqualified the entire District Attorney's office "to avoid the appearance of impropriety."

The first question we must decide is whether the mandamus application has become moot since special prosecutors have

---

1. Portions of this opinion are borrowed from Presiding Judge McCormick's dissenting opinion on original submission.

2. The dissent concludes that Adair particpiated in the prosecution of Clayton by helping Relator prepare for the Motion to Disqualify. This conclusion is unwarranted. The Motion to Disqualify involved legal issues only and required no disclosure by Adair of any facts and circumstances of his former representation of Clayton, other than those testified to in open court at the hearing on the motion. Additionally, Relator's response to this motion in no way contributed to the prosecution of appellant, but only determined *who* might be prosecuting him from then on.

**4**

already been appointed and have prosecuted the murder indictment to a successful conviction in the trial court. On original submission, we found that the application was moot because the disqualification order encompassed only "the prosecution" of the [trial court cause numbers]. However, appellate review of a capital case is automatic and a very important phase of the prosecution. The appeal of a conviction is a duty which falls directly upon the District Attorney's office. Respondent has effectively continued Relator's disqualification into the appellate stage by appointing a special prosecutor to represent the State on appeal. Also, Clayton stands charged with two other offenses which the District Attorney may wish to prosecute were the entire office not disqualified. Because Relator's office is currently precluded from pursuing its normal duties with respect to the capital murder appeal and the two other indictments against Clayton, we find that the mandamus action is not moot and turn to an examination of its merits.

In pertinent part, Article V, Section 21 of the Texas Constitution reads:

The County Attorneys shall represent the State in all cases in the District and inferior courts of their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature. The Legislature may provide for the election of District Attorneys in such districts, as may be deemed necessary, and make provision for the compensation of District Attorneys and County Attorneys. District Attorneys shall hold office for four years, and until their successors have qualified.

Relying on Tex. Const. Article V, Section 21, Texas courts have uniformly declared that the offices of county and district attorneys are constitutionally created and therefore constitutionally protected. See *State v. Moore,* 57 Tex. 307, 315 (1882). See also *Hill County v. Sheppard,* 142 Tex. 358, 178 S.W.2d 261, 264 (1944); *Maud v. Terrell,* 109 Tex. 97, 200 S.W. 375, 376 (1918); *Shepperd v. Alaniz,* 303 S.W.2d 846, 850

(Tex.Civ.App.—San Antonio 1957, no writ); *Neal v. Sheppard,* 209 S.W.2d 388, 390–391 (Tex.Civ.App.—Texarkana 1948, writ ref'd.); *State Board of Dental Examiners v. Bickham,* 203 S.W.2d 563, 566 (Tex.Civ.App.—Dallas 1947, no writ); *State ex rel. Hancock v. Ennis,* 195 S.W.2d 151, 152–153 (Tex.Civ.App.—San Antonio 1946, writ ref'd. n.r.e.).

The authority of county and district attorneys "cannot be abridged or taken away." *Bickham,* 203 S.W.2d at 566. See also *Moore,* 57 Tex. at 315; *Maud,* 200 S.W. at 376; *Adamson v. Connally,* 112 S.W.2d 287, 290 (Tex.Civ.App.—Eastland 1937, no writ); *American Liberty Pipe Co. v. Agey,* 167 S.W.2d 580, 583 (Tex.Civ.App.—Austin, 1942) aff'd., 141 Tex. 379, 172 S.W.2d 972 (1943). "Nor may the State be represented in district or inferior courts by any person other than the county or district attorney, unless such officer joins them." *Bickham,* 203 S.W.2d at 566, citing *Allen v. Fisher,* 118 Tex. 38, 9 S.W.2d 731 (1928) and *State ex rel. Downs v. Harney,* 164 S.W.2d 55 (Tex.Civ.App.—San Antonio 1942, writ ref'd. w.o.m.).

The Legislature, in creating the Taylor County Criminal District Attorney's Office, has mandated that "the Criminal District Attorney of Taylor County *shall* perform all the duties in Taylor County required of District Attorneys by general law." Tex. Gov't.Code Ann., Sec. 44.321 (emphasis added). The Code of Criminal Procedure sets forth that "[e]ach district attorney *shall* represent the state in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely." Article 2.01, V.A.C.C.P. (emphasis added).

By preventing the Taylor County District Attorney and his entire staff from participating in the Clayton prosecution, the trial court has constructively removed the District Attorney from his elected office with respect to that case. The Texas and this State's laws forbid trial court removal of District Attorneys, except under

statutorily defined circumstances after a trial by jury.[3]

■■■ The Texas Local Government Code provides for District Court removal of county officials, including District Attorneys, for three causes: (1) incompetency; (2) official misconduct; or (3) intoxication. V.T.C.A., Local Gov't.Code Sec. 87.013. The District Judge may not remove the official merely by his order, as was done in the instant case; a trial by jury must be held before removal. V.T.C.A., Local Gov't.Code Sec. 87.018(a). Where power is granted by statute or constitution to remove a public officer for certain specified causes, the power of removal is limited to the causes specified. *Ridgeway v. City of Fort Worth*, 243 S.W. 740 (Tex.Civ.App.— Ft. Worth 1922, writ dism'd.). We therefore conclude that a trial court can remove a District Attorney *only* for one of the three causes enumerated in Sec. 87.013 and *only* after the trial by jury mandated in Sec. 87.018(a).[4] Therefore, it is more than evident that when the trial court judge disqualified the Taylor County Criminal District Attorney from prosecuting this case, he did so without authority or jurisdiction.

■■■ Generally the extraordinary relief of mandamus will not issue unless the result sought by the aggrieved party is manifestly "ministerial" in nature, as opposed to being "judicial" or "discretionary." *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 898 (Tex.Cr.App.1985). Cf. *Texas Department of Corrections v. Dalehite*, 623

S.W.2d 420, 424 (Tex.Cr.App.1981). However, a writ of mandamus will also issue to nullify a void order. *State ex rel. Millsap v. Lozano*, 692 S.W.2d 470, 482 (Tex.Cr. App.1985); *State ex rel. Holmes v. Denson*, 671 S.W.2d 896, 899 (Tex.Cr.App. 1984). As this Court stated in *Millsap*, "[b]eing without jurisdiction, the order entered after [a] hearing is void and a writ of mandamus will issue to compel vacation of the order." 692 S.W.2d at 482.

In *Terrell v. Greene*, 88 Tex. 539, 31 S.W. 631 (1895), the Supreme Court, in restoring a county attorney to his elected office after a trial court refused the attorney permission to appear before that court, ruled:

> "In the case of public officers, the general rule is that, where a person holds an uncontested title to an office, mandamus will be issued to put him in possession, or where he had an undisputed right to exercise the function of an office, and, having actual and undisputed possession, he is illegally ousted or suspended from the performance of its duties, *he may be restored to his rights as such officer by writ of mandamus*." 31 S.W. at 635 (emphasis added).

■■■ Any distinction between removing an elected prosecutor from a case and "removal from office" is belied by this quotation. A trial court judge is without legal authority to remove a District Attorney from a case and, as such, any order attempting to do so is void.[5]

---

**3.** Similarly, constitutional considerations prohibit judges from removing appointed defense counsel from a case except in certain narrowly-defined circumstances. *See Stearnes v. Clinton*, 780 S.W.2d 216 (Tex.Cr.App.1989).

**4.** Article 2.07, V.A.C.C.P., provides for court appointment of an "attorney pro tem," a.k.a. a "special prosecutor", whenever an attorney for the state is "disqualified to act in any case or proceeding, is absent from the county or district, or is otherwise unable to perform the duties of his office, or in any instance where there is no attorney for the state." Art. 2.07(a). "Disqualified" is defined in Art. 2.08 as follows:

> "[d]istrict and county attorneys shall not be of counsel adversely to the State in any case, in any court, nor shall they, after they cease to be such officers, be of counsel adversely to

the State in any case in which they have been of counsel for the State."

Nowhere do these statutes give trial courts any authority to remove prosecutors from cases for any of these reasons, including "disqualification"; responsibility for recusal is left with the prosecutor.

**5.** We have examined a recent case on this subject from the Amarillo Court of Appeals, *State ex rel. Sherrod v. Carey*, 790 S.W.2d 705 (Tex. App.—Amarillo, 1990). In that case, the court decided that disqualification of the District Attorney's office was within the discretion of the trial court pursuant to its responsibility to ensure due process. These vague due process concerns were said to outweigh any inconsistent implications of Art. 2.01, V.A.C.C.P. The Court of Appeals bolstered this argument by citing

There may be instances when a prosecutor must recuse himself from the prosecution of an individual. See generally, Annot. 31 A.L.R.3d 953. If there is a conflict of interests on the part of the district attorney or his assistants however, the responsibility of recusal lies with them, not with the trial court judge. See Article 2.01, V.A.C.C.P., Tex.Gov't.Code Ann.Sec. 44.321.[6] We do not wish to imply that a defendant would be left without recourse if the prosecution's failure to recuse itself violated his due process rights. If, for example, a prosecutor who had previously represented a defendant later personally prosecuted the defendant in the same matter, the defendant's conviction would violate the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution. *Ex parte Spain*, 589 S.W.2d 132 (Tex.Cr.App. 1979); *Ex parte Morgan*, 616 S.W.2d 625 (Tex.Cr.App.1981).

Contrary to the charge of our dissenting brother, we *are not* in any way saying that Texas prosecutors are immune from the Code of Professional Responsibility. We merely recognize that the current state of

*State v. May*, 270 S.W.2d 682 (Tex.Civ.App.—San Antonio 1954, no writ), and *Worthington v. State*, 714 S.W.2d 461 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd.), and claiming that these two cases mandate a broad interpretation of 2.01, V.A.C.C.P. *May*, however, stands only for the proposition that *if* an elected district attorney has been lawfully disqualified from prosecution of certain causes, so have his assistants who serve at his will and pleasure. *May*, 270 S.W.2d at 684. In *Worthington*, the question of prosecutorial disqualification was never presented to the trial court and nothing was preserved for review. *Worthington*, 714 S.W.2d at 465. We find the Amarillo Court's position unpersuasive.

**6.** It should be noted that this case does not represent a situation where the District Attorney need necessarily have recused himself from the prosecution of the defendant. Although the dissent characterizes this case as one in which Relator violated DR 9–101, Code of Professional Responsibility, an examination of the rule itself reveals that none of its subsections even remotely apply to the situation at hand. DR 9–101, captioned "Avoiding Even the Appearance of Impropriety," reads:
　　(A) A lawyer shall not accept private employment in a matter upon the merits of which he has acted in a judicial capacity.
　　(B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.
　　(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official.
The record clearly indicates that the trial judge was concerned with the ethical considerations accompanying Canon 9 of the Code, not with any violation of DR 9–101. However, his interpretation of Canon 9 was erroneous.
There is quite a difference in the relationship between lawyers working in private law firms and lawyers representing the State. The American Bar Association's Committee of Professional Ethics recognizes that there are substantial reasons against treating the State as a private enterprise. The Committee has ruled that other government lawyers should not be disqualified from handling matters in which an associate was involved in his or her former private practice. The Committee wrote:
　　"When the disciplinary rules of Canons 4 and 5 mandate the disqualification of a government lawyer who has come from private practice, his governmental department or division cannot practicably be rendered incapable of handling even the specific matter. Clearly, if DR 5–105(D) were so construed, the government's ability to function would be unreasonably impaired." Formal Opinion No. 342, 62 A.B.A.J. 517 (1976).
The Committee reasoned that:
　　"The important difference in the adversary posture of the government lawyer is recognized by Canon 7: the duty of the public prosecutor to seek justice, not merely convict, and the duty of all government lawyers to seek just results rather than the result desired by the client. The channeling of advocacy towards a just result as opposed to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules through the action of associates. Accordingly we construe DR 5–105(D) to be inapplicable to other government lawyers associated with a particular government lawyer who is himself disqualified by reason of DR 4–101, DR 5–105(D), DR 9101(B), or similar disciplinary rules."
The Committee concluded that when the individual attorney is separated from any participation on matters affecting his former client, *"vicarious disqualification of a government department is not necessary or wise."* (Emphasis added).
We note that the new Texas Disciplinary Rules of Professional Conduct, approved over one year after this case arose, would not change the result in this case, nor do they depart from the general principles discussed in this footnote. See Rules 1.09(b), 1.10(d), and 1.10(e)(1), and especially Comment 9 to Rule 1.10.

the law accords no authority for the trial courts to enforce these rules by disqualifying an entire prosecutorial office. *Unlike any private attorney*, the local prosecutor—be he district attorney, county attorney, or criminal district attorney—is an elected official whose office is constitutionally mandated and protected. Prosecutors are still subject to the Rules of Professional Responsibility, but they must police themselves at the trial court level because of their status as independent members of the judicial branch of government. Such a holding *is not* tantamount to making the fox guardian of the henhouse or letting the wolf keep watch on the flock, because a prosecutor who violates ethical rules is subject to the disciplining authority of the State Bar like any other attorney. Perhaps even more importantly, as mentioned above, his violation of the rules will subject his cases to reversal on appeal when his unprofessional conduct results in a denial of due process to a defendant. Lastly, he, like all elected public officials, must regularly answer to the will of the electorate. Should his conduct create too much appearance of impropriety and public suspicion, he will ultimately answer to the voters.

In the case before us, the trial court judge has for all practical purposes removed the Taylor County Criminal District Attorney from his constitutionally protected office regarding the prosecution of this case. We hold that the trial judge erred in entering this order. We assume that the Respondent will immediately withdraw it. The writ of mandamus will issue only if he refuses to do so.

It is so ordered.

## BERCHELMANN, Judge, concurring.

Although I agree with the ultimate conclusion reached by the majority's opinion, I write this brief concurring opinion to express my concerns with the unnecessarily broad language employed therein. I do not agree that a trial court's removal of a District Attorney's Office on a particular case is tantamount to removing the District Attorney from his elected office. "Removing" a county official from office is a term of art, and this drastic action is limited to the three narrow situations involving a county official's incompetence, official misconduct or intoxication. V.T.C.A., Local Gov't.Code Sec. 87.018(a).

Removing a District Attorney's Office from a particular case, however, is clearly distinct from an attempt to remove an official from his or her elected office. Because the majority's opinion on motion for rehearing is premised on that fundamental misconception, I concur only in the result reached.

CLINTON, MILLER and STURNS, JJ., join this opinion.

## TEAGUE, Justice, dissenting.

The issue in this cause arose when a motion to disqualify was filed on behalf of James Edward Clayton, who was then accused of committing several crimes, including capital murder. The motion to disqualify questioned whether Hon. James Eidson, the Criminal District Attorney of Taylor County, and his entire staff should be permitted to prosecute Clayton because to permit such to occur might violate DR 9–101, Code of Professional Responsibility.[1]

The facts of this cause relating to the issue are actually quite simple. Hon. Ross Adair, who was then in private practice in Abilene, along with Hon. Ken Leggett, another attorney in Abilene, was appointed by the trial judge to represent Clayton in several cases, one of which was for allegedly committing the offense of capital murder. The record is clear that both Adair and Leggett were at all times diligent, hardworking, and conscientious in their efforts to adequately represent Clayton, leaving no rocks unturned in their endeavors. Many confidential conversations obviously occurred between the three of them. This arrangement lasted for several months until Adair was appointed judge of the County Court at Law No. 2 of Taylor County,

---

1. Now see The Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, adopted by the Supreme Court of Texas on January 1, 1990, and found in the appendix immediately following Texas Government Code Ann. § 83.006 (Vernon Supp.1990).

after which he withdrew from representing Clayton, and later resigned being judge and then became employed by Eidson as an assistant district attorney.

The trial judge, after a hearing, and after invoking the Code of Professional Responsibility, see Vol. 3, *Government Code*, Section 9, commencing at page 412, granted the motion to disqualify Eidson and his staff from prosecuting Clayton on the ground that to further permit them to prosecute Clayton might cause the general public to believe that there was something improper about Eidson and his staff prosecuting Clayton, which obviously might constitute a violation of the Code of Professional Responsibility, DR 9–101.

Probably the most damaging piece of evidence that was presented during the hearing was the fact that soon after Eidson employed Adair, Eidson charged Adair with the responsibility of assisting him in the preparation of his defense to the motion to disqualify himself and his staff from prosecuting Clayton.

Thereafter, Eidson sought the writ of mandamus from this Court to rescind the order of the trial judge disqualifying Eidson and his staff from prosecuting Clayton. Since the trial judge granted the motion to disqualify, special prosecutors have now prosecuted Clayton for capital murder, the jury answered the special issues, see Art. 37.071, V.A.C.C.P., in the affirmative, and the trial judge imposed the death penalty on Clayton. Two remaining non-capital cases are still pending against Clayton on the docket of the trial court. Eidson has not sought leave of this Court to prosecute those cases nor, by the record before us, has he manifested any intent that either he or one or more members of his staff will prosecute those cases at any time in the near future.

The sole issue before this Court is whether, pursuant to the Code of Professional Responsibility, in particular DR 9–101, which provides, "A Lawyer Should Avoid Even the Appearance of Professional Impropriety," the trial judge was authorized to grant the motion to disqualify Eidson and his entire staff from prosecuting Clayton.

Eidson and the majority opinion by Judge White, also see Presiding Judge McCormick's dissenting opinion on original submission, appear to argue that for purposes of prosecuting a particular individual, a District Attorney and his office are immune from the Code of Professional Responsibility and that under no facts or circumstances may he or his office be disqualified by a trial judge simply because there is the possibility that during a particular prosecution, the prosecutor might violate one or more provisions of the Code of Professional Responsibility.

Perhaps not so amazingly, Eidson does have some authority to support his position. See *Pannell v. State*, 666 S.W.2d 96 (Tex.Cr.App.1984); *Henrich v. State*, 694 S.W.2d 341 (Tex.Cr.App.1985). Compare, however, *State Bar of Texas v. Edwards*, 646 S.W.2d 543 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.); *Bert Wheeler's, Inc. v. Ruffino*, 666 S.W.2d 510 (Tex. App.—Houston [1st Dist.] 1983).

Just recently this Court gave its implicit approval of the application of the Code of Professional Responsibility to members of the criminal defense bar when defending an accused person. See *Harrison v. State*, 788 S.W.2d 18 (Tex.Cr.App.1990). Cf. *Stearnes v. Clinton*, 780 S.W.2d 216 (Tex. Cr.App.1989). Should this same holding not be applied to prosecuting attorneys?

The general rule is that before this Court will issue the writ of mandamus the moving party must satisfy two requirements: (1) that the act sought to be compelled is purely ministerial as opposed to discretionary or judicial in nature, i.e., whether the respondent has the authority to do what is the subject of the complaint, see *State ex rel. Thomas v. Banner*, 724 S.W.2d 81, 83 (Tex.Cr.App.1987); *Stearnes v. Clinton*, supra, and (2) no other adequate remedy at law is available, i.e., before the remedy may be deemed adequate, it must be equally convenient, beneficial, and effective as the proceeding by mandamus, see *Smith v. Flack*, 728 S.W.2d 784 (Tex.Cr.App.1987). Also see *State ex rel. Curry v. Gray*, 726

S.W.2d 125 (Tex.Cr.App.1987). In this instance, if the trial judge acted within his authority to grant the motion, there is no need to concern ourselves with the second prong of the above test.

On original submission, this Court held that because Clayton had been tried and convicted of committing the offense of capital murder, and had been assessed the death penalty, "for 'prosecution purposes', [the District Attorney's] application for the writ of mandamus is now clearly moot as to the first cause number ... [F]inding no justiciable controversy before us to decide at this time, Relator's application for the writ of mandamus is Ordered dismissed."

Thereafter, on May 10, 1989, this Court granted the State's motion for rehearing, in which the State argued that the application for the writ of mandamus was not moot because, in addition to the capital murder and death sentence case, which was then pending on direct appeal, two other non-capital felony cases against Clayton were then pending disposition in the trial court, although the State since February 15, 1989, had not seen fit to seek leave to prosecute Clayton on those cases.

I pause to point out that since February 15, 1989, this Court has not been asked to rule on a similar type case, from any county of this State including Taylor County. Thus, and contrary to the State's "Chicken Little" argument, there does not appear to be any substance to the State's claim that should this Court sustain the trial court's decision in this cause, to disqualify Eidson and his staff from prosecuting the defendant Clayton, in order to avoid the possible appearance of impropriety, that this will cause trial judges throughout this State to wholesale disqualify district attorneys and their staffs from prosecuting certain defendants in this State.

Presiding Judge McCormick, in the dissenting opinion that he filed on original submission, and Judge White, in his majority opinion on rehearing, appear to take the position that a District Court Judge has no authority *to disqualify* a District Attorney and his office from prosecuting a particular defendant, except for (1) incompetency; (2) official misconduct; or (3) intoxication on or off duty caused by drinking an alcoholic beverage. § 87.013, Local Government Code. In other words, they argue that even if the trial judge concludes after conducting a hearing on a motion to disqualify that the district attorney's continuing to prosecute a particular defendant might violate the Code of Professional Responsibility, the trial judge is powerless to disqualify the district attorney. I wholeheartedly disagree with this argument.

It appears to me that Presiding Judge McCormick and Judge White are erroneously arguing that what occurred in this cause is tantamount to the trial court *removing*, and not simply *disqualifying* for the prosecution of Clayton's cases, the District Attorney of Taylor County and his staff. Again, the only issue before this Court is whether the trial judge had the authority to prevent the District Attorney of Taylor County and his staff from prosecuting a named defendant because the trial judge concluded after a hearing that to permit same to occur might cause the general public to believe that the District Attorney and his staff were acting improperly. However, no one is attempting to *remove, suspend,* or *oust* District Attorney Eidson from his position of District Attorney of Taylor County, either on a temporary or permanent basis, and to imply that that is what this Court is doing if it sustains the trial judge's decision to disqualify Eidson in Clayton's cases should be offensive to every member of this Court.

The motion to disqualify Eidson and his staff was addressed to the trial court's sound discretion. I find that, based upon the record before us, the trial judge was certainly within his authority to grant the motion, and, under the facts and circumstances, he most certainly did not abuse his discretion in granting the motion.

Although a majority of this Court erroneously held in *Pannell v. State,* supra, that for purposes of Art. 38.23, V.A.C.C.P., the Code of Professional Responsibility does not constitute a statute or law of the State of Texas, "We agree with our brothers in

the federal system that such ethical violations are to be dealt with by means of the administrative mechanisms specially established for dealing with such unethical conduct," (98), also see *Henrich v. State*, 694 S.W.2d 341 (Tex.Cr.App.1985); *Henrich v. State*, supra; cf. *Silverman v. State Bar of Texas*, 405 F.2d 410, 414 (5th Cir.1968), on remand 303 F.Supp. 486 (W.D.Tex.1969), I would apply the Code of Professional Responsibility to a motion to disqualify a district attorney and his staff from prosecuting a particular defendant if such representation might violate the Code of Professional Responsibility, or, as in this case, might give to the general public the appearance of impropriety.

Therefore, I would hold in this cause that the trial judge had the lawful authority and discretion to grant the motion to disqualify Eidson and his staff, in order to avoid the appearance of impropriety, from prosecuting Clayton, which can be a violation of the Code of Professional Responsibility.

In this instance, the trial judge conducted a hearing on the motion to disqualify Eidson, the District Attorney of Taylor County, and his staff from prosecuting Clayton. After the hearing, the trial judge granted the motion to disqualify because, as he put it: "I have great concerns about that, those portions of our ethical considerations that require attorneys, including District Attorneys, *to avoid the appearance of impropriety,* and for that reason I do disqualify the District Attorney's Office, and the District Attorney and your staff is disqualified...." (My emphasis.) Canon 9 of the Code of Professional Responsibility expressly states that "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." The gist of this Canon is to promote public confidence in our system and the legal profession. It exists simply because public confidence in law and lawyers must not be eroded by irresponsible or improper conduct of a lawyer, or which to a lay person might appear to be irresponsible or improper conduct, even though in reality it may not be improper conduct, but simply have the appearance that it is, which can be just as harmful to the Bench and Bar of this State as a showing of actual improper conduct.

It is true that statutorily a district attorney *can be involuntarily removed from office* only for incompetency, official misconduct, or intoxication, and then only after a jury trial. See § 87.013, Local Government Code. Also see Art. 2.08, V.A. C.C.P., which provides that a district attorney shall not be of counsel adversely to the State in any case, in any court, nor shall he, after he ceases to be such, be of counsel adversely to the State in any case in which he has been of counsel for the State, which would be a basis for disqualification. Furthermore, see Art. 2.01, V.A.C.C.P., which provides in part that the District Attorney shall not represent the State in any criminal case in the district courts of his district, in appeals therefrom, where he has been, before his election, employed adversely to the State. Thus, contrary to what the majority opinion appears to hold, in certain instances of statutory law, a district attorney does not himself decide whether he should remain on the case.

A motion to disqualify a particular district attorney is, however, "a matter of ethical, not legal, considerations ..., and that, particularly in cases involving Canon 9, the interest of the client is not the only consideration. Indeed, part of our test for disqualification under Canon 9 calls for a weighing of the likelihood of public suspicion ..." *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1348 (5th Cir.1981).

In this instance, the district court judge, obviously with his hand on the pulse of the community's heartbeat, concluded after a public hearing that to permit the district attorney and his staff to prosecute Clayton might give to the general public the appearance of impropriety, and thus granted the motion to disqualify Eidson and his staff from prosecuting Clayton. Obviously, had attorney Adair figuratively been gagged and bound inside of a straight jacket, and kept locked in a closet, after he became employed by District Attorney Eidson, one might intelligently argue that the trial judge abused his discretion in grant-

ing Clayton's motion to disqualify Eidson and his office from prosecuting him. However, after Adair became employed by Eidson, Adair was actually the individual chosen by Eidson himself to assist him in preparing his defense against the motion to disqualify him and his office from prosecuting Clayton. To me, this was more than sufficient cause for the trial judge to exercise his discretion in the premises and grant the motion to disqualify not only Eidson, the district attorney, but Eidson's entire office as well.

The Florida Supreme Court, in *Florida v. Fitzpatrick*, 464 So.2d 1185, 1188 (Fla. 1985), held in extremely limited fashion "that imputed disqualification of the entire state attorney's office is unnecessary when the record establishes that the disqualified attorney has neither provided prejudicial information relating to the pending criminal charge nor has personally assisted, in any capacity, in the prosecution of the charge." In this instance, we are not confronted with the situation where the disqualified attorney had absolutely nothing to do, either directly or indirectly, with the cause about which the motion to disqualify relates, because Adair, though not a participant in the actual prosecution of Clayton, by assisting Eidson in the preparation of his defense to the motion to disqualify, certainly could not have totally ignored his former relationship with Clayton. Who better than Adair knew the actual facts of that relationship?

In *Florida v. Fitzpatrick*, Justice Ehrlich of that court concluded in the dissenting opinion that he filed in that cause that the entire state attorney's office should have been disqualified in the prosecution of that case because of confidential communications that might have existed between the defendant and the attorney who was later hired by that office.

Justice Ehrlich displayed a certain amount of wisdom in his concern over the "avoiding the appearance of professional impropriety" Canon that exists in Florida, which is similarly worded to our own like Canon of Ethics, when he pointed out that "To the public at large, the potential for betrayal in itself [of the client confidentiality] creates the appearance of evil, which in turn calls into question the integrity of the entire judicial system." (464 So.2d at 1188). Justice Ehrlich also pointed out that the relative cost and hardship flowing from disqualification is minor compared to the harm to the Bench and Bar that might ensue should the motion to disqualify not be granted, i.e., "to maintain public confidence in the Bar it is necessary not only to avoid actual wrong doing but an appearance of wrong doing." Drinker, *Legal Ethics* 115 (1953). I pause to point out that, regarding Clayton's capital murder case, in which special prosecutors were appointed to prosecute that case, and they did so successfully, neither Eidson, the district attorney, nor any member of his staff, has furnished this Court with any information showing how his office sustained any kind of real hardship in that prosecution, either financially or otherwise; therefore, I must presume none exists.

In a situation such as here, in addition to the fact that Adair was assigned the task of assisting in the preparation of a defense to the motion to disqualify Eidson and his office from prosecuting Clayton, the danger of Adair unintentionally or accidentally transmitting confidential information gained from Clayton when he represented Clayton would always be unquestionably great, notwithstanding that Adair might do everything humanly possible to isolate himself from Clayton's cases, or a discussion thereof.

Disqualification under the circumstances in this cause is not to say that Adair cannot be trusted either to discharge his duties as an assistant district attorney faithfully, or not to maintain the confidences he learned when he represented Clayton. It is the appearance of impropriety, and not actual impropriety, that was the issue that the trial judge had to deal with. Again, the appearance of impropriety can be just as harmful as actual impropriety.

Furthermore, I believe that trial judges of this State are not going to grant motions to disqualify district attorneys, much like Legislative Continuances were obtained

many years ago by defense attorneys. Trial judges are simply not going to grant wholesale motions to disqualify district attorneys and their staffs from prosecuting named defendants. Should, however, that occur I believe that this Court stands ready, able, and willing to overrule such action, and to grant those district attorneys summary relief.

Again, the issue in this cause does not encompass the situation where an effort is being made to remove Eidson from office, suspend him from office, oust him from office, either temporarily or permanently, or to dispute his right to that office; it only concerns whether the trial judge had the authority to decide whether Eidson and his staff should be disqualified from prosecuting Clayton. For the majority to state that "By preventing the Taylor County District Attorney from participating in a criminal prosecution, the trial court has effectively removed the District Attorney from his elected office," at 4; "the trial judge has for all practical purposes removed the Taylor County Criminal District Attorney from his constitutionality protected office regarding the prosecution of this case," at 7, is, under the facts of this cause, totally and absolutely absurd and shockingly ridiculous. To permit a District Attorney to be the sole judge of whether he is disqualified from prosecuting a particular defendant, no matter what the basis or the reason for the motion to disqualify might be, is ludicrous at best, and flawed to the gills at worst. It closely resembles leaving the wolf to guard the henhouse, in order to protect the chickens from the wolf. Furthermore, for purposes of the Code of Professional Responsibility, if "[t]here is quite a difference in the relationship between lawyers working in private law firms and lawyers representing the State," at 6, fn. 6, as the majority opinion argues, then perhaps we need to immediately draft two sets of the Code of Professional Responsibility; one for the prosecutors and one for the other members of the Bar.

Although not deciding whether the trial judge would have erred if he had removed defense counsel pursuant to the Canons of Ethics, in *Stearnes v. Clinton*, supra, this Court was confronted with the situation where a trial judge, without any justifiable legal basis, attempted to remove a court appointed attorney from representing the defendant. This Court held that "the power of the trial court to appoint counsel to represent indigent defendants does not carry with it the concomitant power to remove counsel at his discretionary whim...." (780 S.W.2d at 223), and ruled that under the facts and circumstances of that case the trial judge did not have the authority to remove the court appointed attorney from the case. As easily seen, the removal issue in *Stearnes* is not implicated in this cause because here we are only dealing with *a motion to disqualify the District Attorney of Taylor County from prosecuting a named defendant, Clayton*, as to his cases only, and no one else, because the District Attorney employed former counsel for Clayton. Cf. *Emerson v. State*, 54 Tex.Crim. 628, 114 S.W. 834 (Tex.Cr.App.1908), (Held, because "the facts do not sufficiently show that the counsel mentioned had been employed by appellant or placed in such relation to the case as to disqualify him from representing the state," (114 S.W. at 836), counsel, now a prosecuting attorney, was not disqualified from representing the State).

There is, of course, only one Code of Professional Responsibility of this State for all members of the Bar. The issue in this cause is whether a trial judge can disqualify a licensed member of the Bar, the Criminal District Attorney of Taylor County, and his staff, from participating in a particular criminal case because of the possibility such might violate at least one of the Canons.

The authorities all appear to agree that in determining whether a lawyer has avoided " 'even the appearance of professional impropriety' under Canon 9, the movant must show that there is a reasonable possibility of the occurrence of 'specifically identifiable appearance of improper conduct,' and that the 'likelihood of public suspicion or obloquy outweighs the social interest' in obtaining counsel of one's choice." (Citations omitted.) *In re Corrugated Con-*

*tainer Antitrust Litigation,* 659 F.2d at 1345. All appear to agree that violations of other Canons may implicate Canon 9, the appearance of impropriety Canon, for purposes of deciding whether an attorney is disqualified from representing an individual or an entity. For example, one may establish a violation of Canon 4 simply by showing that there was an attorney-client relationship between the party seeking disqualification (here, the defendant Clayton) and Adair, Clayton's former attorney. Of course, Adair's former representation of Clayton is substantially related to the matters involved in the former representation. If a substantial relationship can be shown to exist between the subject matter of a former representation by the attorney and subsequent adverse representations, then a "substantial relationship" exists, i.e., the subject matters of the two representations are substantially related. *Gleason v. Coman,* 693 S.W.2d 564 (Tex.App.—14th Dist. 1985). Knowledge is imputed to "partners" of the lawyer disqualified, even if the members of the "partnership", here the members of the District Attorney's Office, later cease to be the District Attorney of Taylor County or assistant district attorneys of Taylor County.

The argument that to disqualify an entire law firm simply because one member formerly represented a client whose interests are now adverse to the member's present law firm or employer can cause great harm is not necessarily specious, although such argument closely borders on being specious. In *In re Corrugated Container Antitrust Litigation,* supra, the Fifth Circuit held that "even great prejudice to the party whose attorney is disqualified would warrant departure from the substantial relationship standard." (659 F.2d at 1346).

The Fifth Circuit also pointed out that some courts invoke and apply two irrebutable presumptions in this area. "The first is that confidential information has been given to the attorney actually doing work for the client (here, Adair). The second is that the attorney shared the information with his partners (here, Adair sharing confidential information obtained from Clayton with

Eidson, the District Attorney)." (659 F.2d at 1346). The first presumption, the presumption of disclosure, is actually self-explanatory. Thus, a violation of Canon 4 will actually trigger a violation of Canon 9. The second presumption involves whether the likelihood of public suspicion outweighs the social interest in Eidson's continued prosecution of Clayton, Adair's former client. "Canons 9 and 4 do not contemplate comparing the relative harm to the former and present clients (the State and Clayton). This part of Canon 9's test is designed to weigh social interests against each other. Though the protection of the right of a civil litigant to counsel of his choice is important, that social goal is outweighed here by the likelihood that the image of the legal profession would be tarnished by the continuance of this relationship." *In re Corrugated,* supra, at p. 1348.

I observe that just recently the Amarillo Court of Appeals, in *Sherrod v. Carey,* 790 S.W.2d 705 (Tex.App.–7th Dist.1990), handed down a "white horse" case, both factually and legally, to this cause. The only main distinction between this cause and that cause is there the State was attempting to certify the defendant to stand trial as an adult. Just as here, the defendant's court appointed attorney left private practice and became employed as an assistant district attorney. Just as here, counsel was told by the District Attorney to isolate himself from discussions about the case and "have nothing to do with that case." Contrary to here, however, counsel did not participate in preparing or assisting in the preparation of a defense to the motion to disqualify.

After counsel was replaced by other counsel, new counsel filed a motion to disqualify the District Attorney of Randall County and his staff from prosecuting the juvenile. Just as here, the trial judge granted the motion and appointed a special prosecutor.

The Amarillo Court of Appeals ruled that the "State's assurances that [counsel] has been isolated from other members of the district attorney's office *is an acknowledgement that an apparent conflict of*

**14**

*interest exists.* Under such circumstances, steps must be taken to ensure that the child's rights are not jeopardized, invoking the trial court's discretionary powers." (My emphasis.)

Much like the State argues in this cause, the District Attorney of Randall County also argued that the trial judge had no authority to disqualify him and his staff from prosecuting the case. The Amarillo Court of Appeals, relying upon this Court's cases of *Ex parte Spain,* 589 S.W.2d 132 (Tex.Cr.App.1979); *Ex parte Morgan,* 616 S.W.2d 625 (Tex.Cr.App.1981); the then San Antonio Court of Civil Appeals case of *May v. State,* 270 S.W.2d 682 (Tex.Cr.App. 1954); and the Houston (1st) Court of Appeal's case of *Worthington v. State,* 714 S.W.2d 461 (Tex.App.—1st Dist.1986, pet. ref'd), overruled the State's arguments, and held that "article 2.01 must be construed broadly enough to protect a defendant from conflicts of interest involving not only the elected district attorney himself, but also members of his staff. The district attorney, and his entire office under appropriate circumstances, may be disqualified from participation in a particular case on constitutional grounds as well as under the Disciplinary Rules of Professional Conduct. The trial court has a duty to protect a defendant's right to due process of law under both the United States and Texas Constitutions. These constitutional considerations override the inconsistent implications, if any, of article 2.01 argued by the State." Because the Amarillo Court of Appeals correctly decided the issue in *Sherrod v. Carey,* I approve, without any reservations whatsoever, that decision. I further believe that if the Supreme Court of Texas is given the opportunity to review *Sherrod v. Carey,* it, too, will approve that decision.

As previously pointed out, the most harmful piece of evidence against Eidson is the fact that after he employed Adair as an assistant district attorney he assigned Adair to assist him in defending against the motion to disqualify. Presumptively, this caused Eidson and his office to have a conflict of interest, thus presumptively violating at least one of the Canons of Ethics.

*Sherrod v. Carey,* supra, implies that it is impossible to erect "The Chinese Wall Defense To Law–Firm Disqualification," see Volume 128 *University of Pennsylvania Law Review* 677 (1980). Perhaps this is true. However, I save writing on "The Chinese Wall Defense" until the defense is established on the record and the record also shows that the defense had been fully complied with. We have neither in the record of this cause.

For the above and foregoing reasons, I respectfully dissent to this Court issuing the writ of mandamus to Eidson in this cause to rescind Judge Edwards' order disqualifying Eidson and his staff from prosecuting Clayton in the capital murder case as well as the non-capital cases.