NO. 07-05-0042-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 27, 2006
_____

THOMAS COLEMAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 64TH DISTRICT COURT OF SWISHER COUNTY;

NO. A-3778-0304; HONORABLE DAVID GLEASON, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant Thomas Coleman appeals his felony conviction of aggravated perjury. We will affirm.

Appellant testified in a hearing held in March 2003 pursuant to applications for writs of habeas corpus filed by Christopher Jackson, Freddie Brookins, Jr., Jason Jerome

Williams and Joe Welton Moore.[1]  The four habeas applications were heard in a joint evidentiary hearing, which was conducted by assigned judge Ron Chapman.

Appellant later was indicted under three counts alleging aggravated perjury, arising from his testimony at the writ hearings.  The case proceeded to a trial by jury in Lubbock County on a change of venue.  The State elected to proceed only on Counts 1 and 3.  The jury acquitted appellant of aggravated perjury under Count 3 of the indictment, but found him guilty under Count 1 of the indictment.  Count 1 alleged perjury occurred when appellant testified he was not aware of criminal charges brought against him in Cochran County until August 7, 1998. The State contended appellant was actually aware of the pending Cochran County charges at least as early as May 30, 1998 and his false statement was material.

Appellant raises five points of error on appeal.  In his first point, appellant asserts the attorneys appearing for the State did not have the authority to represent the State of Texas at trial.  In this case, the trial judge granted the recusal motion of the elected district attorney Terry McEachern[2] and appointed Roderique Hobson and John Nation to serve as "special prosecutors" in the case.  Appellant notes, and the State concedes, that the nature

---

[1]The Court of Criminal Appeals cause numbers for the writs of habeas corpus are as follows: (1) Christopher Jackson, Cause No. WR-53,362-01, (2) Freddie Brookins, Jr., Cause No. WR-53,358-01, (3) Jason Jerome Williams, Cause No. WR-51,824-01, and (4) Joe Welton Moore, Cause No. WR-49,335-02.

[2]"An attorney for the state who is not disqualified to act may request the court to permit him to recuse himself in a case for good cause and upon approval by the court is disqualified." TEX. CODE CRIM. PROC. art. 2.07(b-1).

of the appointment of Hobson and Nation was actually to serve as attorneys pro tem.[3] An attorney pro tem is appointed by the judge "whenever an attorney for the state is disqualified to act in any case or proceeding . . . or is otherwise unable to perform the duties of his office." TEX. CODE CRIM. PROC. art. 2.07(a). Any competent attorney may perform the duties of the office during the absence or disqualification of the attorney for the State. *Id*. The appointee assumes the duties of the elected district attorney and, in effect, replaces the latter in performing germane functions of the office for purposes contemplated by the appointment. *Stephens v. State*, 978 S.W.2d 728, 731 (Tex.App.–Austin 1998, pet. ref'd).

The trial court signed the order granting McEachern's motion to recuse and appointing Hobson and Nation to the case on April 1, 2003. McEachern's term of office ended December 31, 2004. The newly elected district attorney, Wally Hatch, took office on January 1, 2005. The trial in this case began on January 11, 2005. On January 6, appellant filed a motion by which he contended the grounds for appointment of Hobson and Nation no longer existed, and they should be recused. His first appellate point of error urges the trial court erred by denying the motion and allowing Hobson and Nation to present the State's case at trial. We overrule the point of error.

---

[3] The terms "special prosecutor" and "attorney pro tem" are often used interchangeably although there are clear distinctions between the two. *See, e.g., State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 5 n. 4 (Tex.Crim.App. 1990); *State v. Newton*, 158 S.W.3d 582, 587 (Tex.App.–San Antonio 2005, pet. dism'd); *Stephens. v. State*, 978 S.W.2d 728, 731 (Tex.App.–Austin 1998, pet. ref'd).

The appointment of an attorney pro tem under art. 2.07(b-1) is based on the attorney's request to recuse for good cause and the court's approval of the request. The trial court's order granted the district attorney's motion to recuse and appointed Hobson and Nation "to engage in any acts necessary to prosecute [appellant]." The language of the order does not suggest it was limited to actions occurring during McEachern's term of office.

Citing *Edwards*, 793 S.W.2d at 5, appellant contends that by allowing the attorneys pro tem to remain in place after Hatch assumed office, the trial court removed Hatch from the case. *Edwards* was a mandamus proceeding brought by the elected criminal district attorney, challenging a trial court's order that disqualified the district attorney and his entire staff from prosecuting a particular case. *Id*. at 3. Nothing in the record before us indicates that Hatch considered the authority of the attorneys pro tem terminated when he assumed office, or that he had objection to their completion of the duties for which they were appointed.[4] *See State v. Rosenbaum*, 852 S.W.2d 525, 527 (Tex.Crim.App. 1993) (considering authority of attorney pro tem to appeal on behalf of State, and noting acquiescence of district attorney in pro tem's actions).

In his second point of error, appellant argues the court erroneously admitted State's exhibits 1 and 2, which consist of portions of the reporter's record from the writ hearings. Appellant contends these two exhibits were erroneously admitted because the court

---

[4] Moreover, it would not appear that representation of the State at trial by the attorneys pro tem caused any harm to appellant. TEX. R. APP. P. 44.2.

reporters who reported those portions of the writ hearing testimony and certified the records had not been appointed deputy reporters and had not taken the oath of office.

Appellant's objections at trial to the admission of the exhibits did not specify how or why the defects he perceived in the reporters' credentials rendered the records they produced inadmissible in his criminal trial. Appellant's brief on appeal relies on Rule of Evidence 902(4), which concerns self-authentication of certified copies of public records. Appellant's objection to the exhibits at trial was not based on their authenticity. The record does not present a preserved issue regarding the authenticity of the exhibits. *See Dixon v. State*, 2 S.W.3d 263, 265 (Tex.Crim.App. 1998) (to preserve appellate issue, it must correspond with objection made at trial).

Moreover, we find no merit in appellant's contention. Chapter 52 of the Government Code provides that the official court reporter of a court of record is a "sworn officer of the court." TEX. GOV'T CODE ANN. § 52.041. An official court reporter must both take the "official oath" required of state officers, and sign an additional oath to keep correct, impartial records in each reported case. *Id*. at § 52.045. Chapter 52 authorizes the judge to appoint a deputy court reporter "to perform the court reporting services during the absence of the official court reporter" if the official reporter is unable to perform the duties because of illness, other official work or unavoidable disability. TEX. GOV'T CODE ANN. § 52.042. We are not cited to, nor do we find, any statutory provision or other authority requiring a certified reporter[5] to take an oath before serving as a deputy court reporter.[6]

_____

[5] Both reporters testified to identify the records they transcribed from the writ hearing. Both were certified court reporters. *See* TEX. GOV'T CODE ANN. § 52.021(a)

Nor does appellant point us to authority requiring that the appointment of a deputy court reporter must be in writing, or otherwise prescribing the mechanism of appointment.

We review a trial court's decision to admit or exclude evidence on an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996). Appellant has presented no basis for a conclusion the trial court abused its discretion by admitting the reporter's record excerpts from the writ hearing.[7] His second point of error is overruled.

By his third point, appellant contends the court's charge improperly defined the terms "intentionally" and "knowingly." Specifically, appellant states the court's charge failed to limit the terms to the charge of aggravated perjury and gave the complete definition of "intentionally" and "knowingly" as defined in section 6.03 of the Penal Code.

A jury charge should contain only the portion of the statutory definition that corresponds to the correct culpable mental state as proscribed by the offense. *Ash v. State*, 930 S.W.2d 192, 194 (Tex.App.–Austin 1996, no writ). There are three "conduct

---

(providing uncertified person may not be appointed official court reporter or deputy court reporter). *But cf.* TEX. GOV'T CODE ANN. § 52.031(a) (noncertified reporter may be employed until certified reporter is available).

[6] We here consider the statutory requirements applicable generally to court reporters. Chapter 52 contains provisions applicable only to reporters in particular courts. *See, e.g.*, TEX. GOV'T CODE ANN. § 52.044 (authorizing "additional official court reporters" in Bexar County). None of those specific provisions apply to the 242nd District Court.

[7] Appellant cites *Jordan v. Ortho Pharmaceuticals, Inc.*, 696 S.W.2d 228, 232 (Tex.App.–San Antonio 1985, writ ref'd n.r.e.); *Aetna Ins. Co. v. Aviritt*, 201 S.W.2d 643 (Tex.Civ.App.–Waco 1947, no writ) and *Ragland v. Cone*, 118 S.W.2d 1098 (Tex.Civ.App.–Amarillo 1938, no writ). None requires a different conclusion.

elements" that may be contained in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *Id*. (citing *McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Crim.App. 1989)). An offense may include one or more of these conduct elements. *Id*.

At trial, appellant's counsel objected to the charge by stating, "we object to the charge because it gives an improper definition of a culpable mental state and–improper application of a culpable mental state to the law and the facts of this case."[8] The court overruled the objection.[9]

If the error in the charge was the subject of a timely and proper objection in the trial court, reversal is required if the error "is calculated to injure the rights of defendant." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (en banc). For charge error that was not preserved at trial, the error must have been so harmful that the defendant was denied "a fair and impartial trial." *Patrick v. State*, 906 S.W.2d 481, 492 (Tex.Crim.App. 1995) (en banc). For both preserved and unpreserved charging error, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and

---

[8] In his brief, appellant contends aggravated perjury is a "nature of conduct" offense and it was improper to charge the jury on the "result of conduct" or the "circumstances surrounding the conduct" part of the 6.03 definition. We agree the offense alleged in Count 1 of the indictment does not include a "result of conduct" element.

[9] In its brief, the State argues the objection "was not specific enough for the court to remedy the charge in a manner that would have satisfied [a]ppellant." We need not address that argument because our disposition of appellant's issue would be the same whether or not the asserted charge error is treated as preserved.

any other relevant information revealed by the record of the trial as a whole." *Id*.; *Arline v. State*, 721 S.W.2d 348, 351-52 (Tex.Crim.App. 1986). In assessing harm resulting from the inclusion of improper conduct elements in the definition of culpable mental states, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Patrick,* 906 S.W.2d at 492.

The relevant portions of the trial court's charge to the jury read as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to his conduct or the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

\*\*\*

If you believe from the evidence beyond a reasonable doubt that the Defendant, Thomas Coleman, on or about the 23rd day of March, 2003, in Swisher County, State of Texas, as alleged in Count One of the indictment, did then and there, intentionally or knowingly, with the intent to deceive, and with knowledge of the statement's meaning, make a false statement under oath: to wit, that, prior to August 7, 1998, he did not know that he had been charged with crimes in Cochran County, Texas, relating to theft and abuse of official capacity, when in truth and in fact the said Defendant, Thomas Coleman, well knew that he had been charged with such crimes in Cochran County, Texas, from at least May 30, 1998, and that the said false statement was made in the course of and in connection with an official proceeding, to wit: an evidentiary hearing conducted pursuant to applications for writ of habeas corpus filed by Christopher Jackson; Freddie Brookins, Jr.; Jason Jerome Williams and Joe Welton Moore in the 242nd District Court of Swisher County, Texas; and that said false statement was material, then you will find the Defendant guilty and say so by your verdict.

8

In the charge, the definitions of "intentionally" and "knowingly" included all three conduct elements. However, when those terms are viewed in their factual context, it becomes apparent the conduct elements are actually limited. To convict appellant, the application paragraph required the jury to find he intentionally and knowingly "with the intent to deceive, and with knowledge of the statement's meaning, ma[de] a false statement under oath." The "result of conduct" mental state is not a part of the application paragraph. We find no harm resulted from the court's inclusion of the "result of conduct" language in the definitions section of the charge. *Patrick*, 906 S.W.2d at 492; *Hughes v. State*, 897 S.W.2d 285, 296-97 (Tex.Crim.App. 1994). We overrule appellant's third issue on appeal.

Appellant's fourth point of error also complains of an error in the court's charge to the jury. The error involved the date on which his false testimony occurred. The indictment alleged the offense occurred on or about the 21st day of March, 2003. The application paragraph of the court's charge, however, directed the jury to find appellant guilty if he committed aggravated perjury on or about the 23rd day of March, 2003.

The State argues appellant did not point out the error in the date, and reversal is required only if the error was egregiously harmful under *Almanza*. 686 S.W.2d at 171. We agree that appellant did not preserve error concerning the incorrect date. The defense presented a verbal objection to the application paragraph, stating "[t]he charge fails to properly apply the law to the allegations in the indictment and the facts in evidence in this case." Counsel's objection was not "in writing, distinctly specifying each ground of

9

objection." TEX. CODE CRIM. PROC. art. 36.14. The error in the date requires reversal, then, only if it deprived appellant of a fair trial. *Patrick*, 906 S.W.2d at 492.

The State need not allege a specific date in the indictment. *Sledge v. State*, 953 S.W.2d 253, 255 (Tex.Crim.App. 1997) (en banc). When an indictment alleges that some relevant event transpired "on or about" a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory period of limitations. *Thomas v. State*, 753 S.W.2d 688, 692 (Tex.Crim.App. 1988). The precise date of appellant's perjurious testimony was not an issue at his trial. The erroneous date in the charge did not cause appellant egregious harm. *See White v. State*, 644 S.W.2d 881, 883 (Tex.App.–Tyler 1982, no writ) (misspelling of victim's name in charge not fundamental error; jury not possibly misled). We overrule appellant's fourth point of error.

Appellant's fifth point of error challenges the evidence establishing the materiality of his false statement.[10] In order to prove aggravated perjury, the State was required to prove beyond a reasonable doubt that appellant's statement was material. TEX. PEN. CODE §§ 2.01; 37.03. A statement is material if it could have affected the course or outcome of the official proceeding. *Id.* at § 37.04(a). Whether a statement is material is a question of law. *Id.* at § 37.04(c).

---

[10] Appellant characterizes his issue as one challenging the legal and factual sufficiency of the evidence supporting a finding of materiality. The Penal Code expressly provides, however, that whether a statement is material is a question of law. TEX. PEN. CODE § 37.04(c). We address appellant's issue under that standard.

Judge Chapman was called to testify at appellant's trial, and the parties' briefs focus on his testimony concerning the materiality of appellant's perjurious statement. Appellant contends that the judge was asked only general questions about the importance of appellant's credibility as an issue at the writ hearing, and that the judge's testimony was insufficiently directed at the specific perjurious statement to support its materiality. We disagree. Referring to appellant's testimony at the writ hearing, Judge Chapman said "a good part of the testimony" dealt with the issue of what date appellant knew that charges had been lodged against him in Cochran County. The judge also agreed that a part of his task of conducting the writ hearing was to make findings and conclusions, and that doing so required him to resolve conflicts in the evidence. The judge's testimony continued:

Q: Was [appellant's] testimony - - testimony and whether or not he was credible - - was that an important issue in these writ hearings?

A: It was very important.

Q: In other words, depending upon how you might have determined the fact issues, your finding [sic] could have gone one way or the other?

A: Yes, sir.

Q: Could - - could his statements or his credibility have affected the course or outcome of these writ proceedings?

A: Absolutely.

Review of appellant's testimony at the writ hearing confirms Judge Chapman's memory of the testimony. On numerous occasions, at the writ hearing, appellant was questioned about when he learned of the Cochran County criminal charges against him. Appellant steadfastly maintained he did not know of the criminal charges until the day of

11

his arrest on August 7, 1998, even when confronted with several documents indicating otherwise.

Although Judge Chapman's testimony does not identify a specific finding[11] that could have "gone one way or the other," we think it is clear from his testimony that his evaluation of appellant's testimony about the date he became aware of the Cochran County charges at least had the potential to affect the findings the judge ultimately made in the case. Identifying a specific finding is not essential to the materiality of appellant's false statements. False statements as to facts that are collaterally, remotely or circumstantially material may form the basis of aggravated perjury. *Ly v. State*, 931 S.W.2d 22, 24 (Tex.App.–Houston [1st Dist.] 1996, no writ).

Materiality refers to "'misstatements having some substantial potential for obstructing justice' and excludes 'utterly trivial falsifications.'" *Mitchell v. State*, 608 S.W.2d 226, 228 (Tex.Crim.App. 1980). Appellant's repeated representation that he did not know of the charges until his arrest was not a trivial falsification. We find the statements could have affected the course or outcome of the writ proceeding, and overrule appellant's fifth point.

Having overruled appellant's points of error, we affirm the judgment of the trial court.

James T. Campbell
Justice

Publish.

---

[11] The trial court sustained appellant's objection to the admission into evidence of Judge Chapman's findings of fact and conclusions of law from the writ hearing.

12