Antwain ALEXANDER, Appellant,

v.

The STATE of Texas, State.

No. 2-94-487-CR.

Court of Appeals of Texas,
Fort Worth.

July 27, 1995.

Rehearing Overruled Sept. 7, 1995.

Charles Thorn, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of the Appellate Section, Danielle A. LeGault, Barry Shelton and Mike Parrish, Assistants, Fort Worth, for appellee.

Before CAYCE, C.J., and DAY and BRIGHAM, JJ.

## OPINION

CAYCE, Chief Justice.

Antwain Alexander appeals his conviction and twenty-year sentence for the offense of aggravated robbery with a deadly weapon. The trial was held in "Trial Room B" in the Tarrant County Justice Center, Fort Worth, Tarrant County, Texas. Judge Harry Hopkins (retired) presided over the trial.

In three points of error, Alexander complains that the existence and operation of "Trial Room B" violates the separation of powers provision of the Texas Constitution; that Judge Hopkins was assigned to conduct the trial in "Trial Room B" in violation of the constitutional requirement that the judges of all courts of county-wide jurisdiction be elected to a four-year term; and, that a question in the jury questionnaire was unconstitutional because it asked the venire to identify their religious affiliation, if any.

We overrule the points of error and affirm the judgment below.

Alexander robbed Freddie Davis at gunpoint. He took Davis's car, wallet and groceries. Alexander was later apprehended by the police following a high-speed chase. The indictment charging Alexander with aggravated robbery with a deadly weapon was returned to the 372nd District Court, Tarrant County, Texas. The cause was then transferred to the 213th District Court, Tarrant County, Texas, the Honorable Robert Gill, presiding. Judge Hopkins conducted the trial pursuant to assignment by the Honorable Clyde Ashworth, presiding judge of the Eighth Administrative Judicial Region of Texas.

In his first point of error, Alexander argues that his conviction should be reversed on jurisdictional grounds because the existence and operation of Trial Room B violates the separation of powers provision of article II, section 1 of the Texas Constitution. He contends that Trial Room B was created by the county commissioners' court and that no legislative act authorizes its existence or operation. In his second point of error, Alexander contends that Judge Hopkins had no judicial power to conduct the trial in Trial Room B because article V, section 30 of the Texas Constitution requires that all judges of courts of county-wide jurisdiction hold office through election to a four-year term and, as a retired judge, Judge Hopkins is not "elected" by the voters. Both complaints are contrary to established rules of law.

It is well-settled that trials conducted in impact courts do not violate the Texas Constitution. *Hunnicutt v. State*, 523 S.W.2d

244, 245 (Tex.Crim.App.1975); *Zamora v. State,* 508 S.W.2d 819, 822 (Tex.Crim.App. 1974); *Griffin v. State,* 749 S.W.2d 497, 499–500 (Tex.App.—Fort Worth 1988, pet. ref'd) (op. on reh'g); *see also Reed v. State,* 500 S.W.2d 137, 138 (Tex.Crim.App.1973) (upholding constitutionality of annex courts). "Impact courts" are not courts; rather, they are merely intended to serve as extensions of lawfully designated trial courts. *Armstrong v. State,* 719 S.W.2d 668, 669 (Tex.App.—Fort Worth 1986, no pet.); *see Banks v. State,* 662 S.W.2d 616, 617 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd). "The name 'Impact Court' is nothing more than a term of convenience." *Armstrong,* 719 S.W.2d at 669.

 It is equally well-established that a retired judge sitting by administrative assignment possesses all the powers of the court to which he is assigned. TEX.GOV'T CODE ANN. § 74.052 (Vernon 1988); *Herrod v. State,* 650 S.W.2d 814, 817 (Tex.Crim.App. 1983) (op. on reh'g); *Alfaro v. State,* 638 S.W.2d 891, 895 (Tex.Crim.App.1982); *Pendleton v. State,* 434 S.W.2d 694, 696–97 (Tex. Crim.App.1968); *see Tyrone v. State,* 854 S.W.2d 153, 156 (Tex.App.—Fort Worth 1993, pet. ref'd); *Griffin,* 749 S.W.2d at 499; *see also* TEX. CONST. art. V, § 11 ("District Judges may exchange districts, or hold courts for each other when they may deem it expedient"). Absent a showing to the contrary, it is presumed that the assignment was properly made in accordance with all statutory requirements. *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 854 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

 The record conclusively shows that Judge Hopkins was duly assigned to preside over Alexander's trial in the 213th District Court. As a duly assigned visiting judge of the 213th District Court, Judge Hopkins had full power and authority under the laws and constitution of this state to conduct Alexander's trial in Trial Room B. There is no evidence that Trial Room B was used for any purpose other than another courtroom to conduct the business of the 213th District Court. Points of error one and two are overruled.

In his third point of error, Alexander challenges the constitutionality of a question in the jury questionnaire which sought to determine the venire's membership, if any, in "clubs, groups, church, et cetera, in which you *actively* participate." Alexander contends that this question was improper because it elicited information about prospective jurors' religious beliefs which the State may have used for improper religion-based peremptory challenges. *See Casarez v. State,* No. 1114–93, slip op. at 20, —— S.W.2d ——, —— [1994 WL 695868] (Tex.Crim.App. Dec. 14, 1994) (submitted on reh'g Apr. 26, 1995) (use of peremptory challenge to strike prospective juror on basis of religious beliefs is unconstitutional under Equal Protection Clause). Alexander does not complain that a venireperson was actually challenged or stricken from the panel on the basis of their religious beliefs.

 Although Alexander couched his objection to the jury questionnaire in terms of "separation of church and state,"[1] it is clear that the thrust of his objection was that the question would result in discrimination in jury selection in violation of the Equal Protection Clause.[2] As a predicate to complaining of discrimination in jury selection, a defendant ordinarily must show that a prospec-

---

1. Defense counsel stated "I would object ... on the basis of the constitution of the United States requiring separation of church and state." *See* U.S. CONST. amend. I. ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . .").

2. The entire objection and ruling in the trial court were as follows:

 [DEFENSE COUNSEL:] Your Honor, I have an objection I would like to make to this panel. It goes to the fact that they have filled out their questionnaire, and one of the questions on the questionnaire asks them to list their church that they attend, and I would object to that questioning on this questionnaire on the basis of the Constitution of the United States requiring separation of church and state.

 It appears to me that the only reason that that question could be on here is so that their *religious affiliation could be used in determining* whether or not they would be a juror that would—that the State would like to be seated in this case. If—it has to have some reason for being there, and it would appear to me the only reason that we are using these question-

tive juror was stricken through the discriminatory use of a peremptory challenge. *Id.; see also J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. ——, ——, 114 S.Ct. 1419, 1427, 128 L.Ed.2d 89, 107 (1994) (unlawful use of peremptory challenge based solely on gender); *Batson v. Kentucky,* 476 U.S. 79, 92–95, 106 S.Ct. 1712, 1721–22, 90 L.Ed.2d 69, 85–87 (1986) (unlawful use of peremptory challenge based on race).

■ Since there is no showing that a peremptory challenge was used to strike a prospective juror on the basis of religion, Alexander has presented nothing for us to review. Accordingly, Alexander has failed to present a sufficient record to support his equal protection claim on appeal. *See* TEX.R.APP.P. 50(d).

Moreover, the questionnaire's mere inquiry into the prospective jurors' religious affiliation did not violate Alexander's rights under the Equal Protection Clause. In the *Casarez* decision, the court of criminal appeals held that the use of peremptory challenges to strike prospective jurors on the basis of their religious preference is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. *Casarez,* No. 1114–93, slip op. at 16–17, 21, —— S.W.2d at —— ——, ——. However, nowhere in *Casarez* does the court of criminal appeals suggest that mere inquiry or knowledge of a venireperson's religion is unconstitutional.

In this case, no venireperson was stricken on the basis of his or her religious beliefs. Alexander has neither alleged nor shown harm from the religious affiliation inquiry contained on the jury information sheet. We, therefore, hold that the trial court did not abuse its discretion in refusing to quash the panel which answered the religious affiliation question. Alexander's third point of error is overruled.

The trial court's judgment is affirmed.

naires is diversify [sic] between people who we feel should or should not serve on this jury.
 On that basis, I would object to this panel because of the questionnaire that they have filled out, and the remedy that I would ask for

is that we quash the panel and start all over with a new panel.
 . . . .
 THE COURT: Court denies the Defense motion to quash.