# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00090-CV

### In re Thomas Allen Simon

## ORIGINAL PROCEEDING FROM BURNET COUNTY

## M E M O R A N D U M   O P I N I O N

Relator Thomas Allen Simon, who faces pending criminal charges, seeks mandamus relief to compel disqualification of the entire office of the district attorney who represents the State. We will deny the petition.

## BACKGROUND

Simon has been charged by indictment in Burnet County with the offenses of sexual assault and aggravated assault. This mandamus proceeding, however, centers instead on a somewhat unusual series of preliminary procedural events—including an earlier mandamus proceeding—involving Simon's appointed trial counsel, Tracy Cluck, and the office of the local district attorney, Hon. Wiley E. (Sonny) McAfee, District Attorney for the 33rd and 424th Judicial Districts. This saga began in August 2015, when Mr. Cluck filed a motion seeking the appointment of a medical expert and additional funds for investigative services.[1] An ex parte hearing[2] was held before the regular presiding judge of the 424th District Court, Hon. Evan Stubbs, who for

---

[1] *See Ake v. Oklahoma*, 470 U.S. 68, 82-83 (1985).

[2] *See id*.; *Williams v. State*, 958 S.W.2d 186, 193-94 (Tex. Crim. App. 1997).

reasons unclear from the record directed that a court reporter transcribe that proceeding. The hearing concluded with the district's court's removal of Cluck as counsel.[3] Simon, acting through Cluck and additional counsel L.T. "Butch" Bradt, then sought mandamus relief in this Court seeking to compel Cluck's reinstatement as counsel.

In support of this earlier mandamus petition, Simon filed the reporter's record from the hearing under seal. Simon named the State of Texas—specifically, McAfee, as District Attorney—as a real party in interest.[4] This Court requested responses to the petition, prompting the State to prepare a response. In the course of preparing a response, the State, through Assistant District Attorney Gary Bunyard, requested a copy of the record from our Clerk's office. After obtaining Bunyard's signature on a form confidentiality and nondisclosure agreement, the Clerk's office complied.[5] After the State filed its response, this Court denied relief.[6] Simon

---

[3] The court also denied the motion for additional funds but left pending the motion seeking appointment of a medical expert.

[4] *See* Tex. R. App. P. 52.2. Also named as a real party in interest was an attorney whom the district court had appointed in Cluck's stead.

[5] Upon learning of this request, Cluck sent an email to Bunyard, copied to the "Records Request" email address of the Clerk, stating: "Please note that this is a confidential ex parte record and should not be disclosed to the State without an order from the court of appeals." This email, however, was not brought to the Court's attention because it was not filed in accordance with the governing rules. *See* Tex. R. App. P. 9.2(a), (c). The Clerk's office called Cluck and left a message informing him that the email was not a proper filing. There was no further communication from Cluck regarding Bunyard's request.

[6] *See In re Simon*, No. 03-15-00500-CR, 2015 Tex. App. LEXIS 8845 (Tex. App.—Austin, Aug. 25, 2015, orig. proceeding) (mem. op., not designated for publication).

2

then filed a similar petition for writ of mandamus with the Court of Criminal Appeals, which granted relief.[7]

Following the Court of Criminal Appeals's ruling, Judge Stubbs recused himself and the case was reassigned to a visiting judge, Hon. Burt Carnes. Subsequently, Simon moved to disqualify the entire office of the District Attorney. As relevant here, Simon argued that his due-process rights had been violated through the access the District Attorney's office had gained to the hearing record, which Simon characterized as containing core attorney work product.[8] In response, the State disputed Simon's characterization of the record and the existence of any grounds for disqualification.

A hearing was held at which neither side presented evidence, although it appears that the district court examined the hearing record in camera. Of note, Bunyard acknowledged that both he and McAfee had personally reviewed the hearing record in connection with the earlier mandamus proceeding. However, Bunyard added that the office had erected a "Chinese Wall," keeping the record confidential as to all other personnel, including the attorney who would be handling the trial, and excluding Bunyard and McAfee from any further involvement in Simon's case beyond the disqualification issue.[9]

---

[7] *See In re Simon*, No. WR-83,783-01, 2015 Tex. Crim. App. Unpub. LEXIS 805 (Tex. Crim. App. Nov. 4, 2015) (per curiam) (not designated for publication).

[8] Simon also complained that the State's filings in the earlier proceeding "created a public perception of unfairness and bias against Mr. Simon." We do not understand him to be urging that argument here.

[9] A "Chinese wall" refers to "a system of screening procedures that prevents any flow of confidential information from a disqualified attorney to any other member of his present firm who arguably may be an adversary of the disqualified attorney's former client." David J. Beck, *Legal Malpractice in Texas: Second Edition*, 50 Baylor L. Rev. 697, 729 (1998).

Following the hearing, the district court took the matter under advisement and ultimately granted the motion to disqualify. However, no further action was taken at that time, such as the appointment of an attorney pro tem to prosecute the case.[10] Instead, Judge Carnes, citing health concerns, withdrew from the case. The case was then reassigned to another visiting judge, Hon. Don Leonard. Following his assignment, Judge Leonard set a hearing to discuss the status of the case.[11] The State, through McAfee and Bunyard, subsequently filed a motion for reconsideration of the disqualification order, urging that the ruling had been in error. Simon's defense team did not file a written response to the motion, but objected at the scheduled hearing to the prosecutors' "standing" to seek reconsideration, urging that their sole remedy was to seek mandamus relief. The district court overruled that objection, and proceeded to hear argument on the merits of the motion. Following argument, which was substantively similar to that from the prior hearing, the district court set aside the disqualification order.

Simon seeks to challenge this order through the present mandamus petition.

---

[10] *See* Tex. Code Crim. Proc. art. 2.07(a) ("Whenever an attorney for the state is disqualified to act in any case or proceeding, is absent from the county or district, or is otherwise unable to perform the duties of his office, or in any instance where there is no attorney for the state, the judge of the court in which he represents the state may appoint any competent attorney to perform the duties of the office during the absence or disqualification of the attorney for the state.").

[11] The hearing notice, transmitted via email from the court coordinator, advised that:

This is a hearing that Judge Leonard indicated he wanted set to discuss discovery status and any pending motions. He understands that Judge Carnes disqualified the District Attorney, that no prosecuting attorney has been appointed at this time, but indicated that he wanted them at the hearing on this date. I am noticing them and Mr. Cluck as directed by Judge Leonard.

4

**ANALYSIS**

Simon contends that the district court reversibly erred in two respects: (1) the district court lacked power to reconsider and vacate the prior order disqualifying the District Attorney's office; and (2) even if the district court had power to reconsider the prior order, disqualification was compelled on the merits.

**Standard of review**

In criminal cases, "mandamus relief is appropriate only when a relator establishes (1) that he has no adequate remedy at law to redress his alleged harm, and (2) that what he seeks to compel is a ministerial act, not a discretionary or judicial decision."[12] With respect to the "no adequate remedy at law" requirement, the Court of Criminal Appeals has explained "that a remedy at law, though it technically exists, 'may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate.'"[13] Under the circumstances here, we will assume without deciding that Simon would lack an "adequate" remedy at law to redress any harm from the district court's order[14] and focus instead on the second element, whether he has

---

[12] *In re Allen*, 462 S.W.3d 47, 49 (Tex. Crim. App. 2015) (citing *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011)).

[13] *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (quoting *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648-49 (Tex. Crim. App. 2005)).

[14] As the State emphasizes, denials of motions to disqualify prosecutors have been addressed on direct appeal. *See, e.g.*, *Landers v. State*, 256 S.W.3d 295, 308-10 (Tex. Crim. App. 2008); *Goodman v. State*, 302 S.W.3d 462, 466 (Tex. App.—Texarkana 2009, pet. ref'd); *Scarborough v. State*, 54 S.W.3d 419, 424-25 (Tex. App.—Waco 2001, pet. ref'd); *Zarychta v. State*, 44 S.W.3d 155, 160-62 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see also State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 7 (Tex. Crim. App. 1990) (plurality op.) (concluding that remedy for defendant whose due-process rights are violated as a result of being prosecuted by district attorney

demonstrated any failure by the district court to perform a "ministerial" duty. "A relator satisfies the ministerial-act component when he can show that he has a clear right to the relief sought."[15] "A clear right to relief is shown when the facts and circumstances dictate but one rational decision 'under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles.'"[16] "A ministerial act, by its nature, does not involve the use of judicial discretion; it must be positively commanded and so plainly prescribed under the law as to be free from doubt."[17] "Stated another way, an act may be regarded as 'ministerial' when the facts are undisputed and, given those undisputed facts, 'the law clearly spells out the duty to be performed . . . with such certainty that nothing is left to the exercise of discretion or judgment.'"[18]

---

who should have been disqualified is "reversal on appeal"). Disqualification issues have also been addressed through post-conviction applications for writs of habeas corpus. *See, e.g.*, *Ex parte Morgan*, 616 S.W.2d 625, 626 (Tex. Crim. App. 1981); *Ex parte Spain*, 589 S.W.2d 132, 133-34 (Tex. Crim. App. 1979). And, in some cases, they have been addressed via mandamus, as here. *See, e.g.*, *In re Cox*, 481 S.W.3d 289, 295-96 (Tex. App.—Fort Worth 2015, orig. proceeding) (op. on reh'g); *In re Goodman*, 210 S.W.3d 805, 813-14 (Tex. App.—Texarkana 2006, orig. proceeding). Because we ultimately conclude that Simon does not seek to compel a ministerial act, we need not decide whether Simon has an "adequate" remedy at law here.

[15] *Allen*, 462 S.W.3d at 49 (citing *In re Weeks*, 391 S.W.3d at 122).

[16] *Weeks*, 391 S.W.3d at 122 (quoting *Bowen*, 343 S.W.3d at 810).

[17] *Allen*, 462 S.W.3d at 49-50 (citing *Banales v. Court of Appeals for the Thirteenth Judicial Dist.*, 93 S.W.3d 33, 35 (Tex. Crim. App. 2002); *State ex rel. Hill v. Court of Appeals for the Fifth Dist.*, 34 S.W.3d 924, 927-28 (Tex. Crim. App. 2001)).

[18] *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207, 210 n.8 (Tex. Crim. App. 2007) (quoting *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994)).

**Reconsideration**

We first consider Simon's assertion that the district court lacked power to revisit the earlier disqualification order. If valid, a complaint that a trial court lacked authority to act may demonstrate the requisite "clear right to relief" necessary for mandamus to issue.[19] But this is ultimately not the complaint that Simon makes. Instead, Simon focuses on attacking whether the District Attorney's office had "standing" to seek reconsideration of the disqualification order on behalf of the State. Once the District Attorney's office was disqualified, in Simon's view, the office was relegated to seeking relief solely from this Court, through mandamus, and could not request the district court to change its mind. Instead, Simon reasons, the office was required to comply with the disqualification order with respect to all proceedings at the trial level, including even those relating to the disqualification itself.

As support for this contention, Simon points to language in *Maness v. Meyers*, a case in which the United States Supreme Court addressed "[t]he narrow issue . . . [of] whether a lawyer may be held in contempt for advising his client, during the trial of a civil case, to refuse to produce material demanded by a subpoena duces tecum when the lawyer believes in good faith the material may tend to incriminate his client."[20] The Supreme Court held that the lawyer could not be held in contempt under those circumstances.[21] The court's holdings were preceded by its acknowledgment

---

[19] *See, e.g.*, *State v. Patrick*, 86 S.W.3d 592, 594-95, 597 (Tex. Crim. App. 2002) (granting mandamus relief in case where trial court ordered DNA testing after its plenary power had expired); *Stearnes v. Clinton*, 780 S.W.2d 216, 225-26 (Tex. Crim. App. 1989) (granting mandamus relief in case where trial court removed defendant's appointed counsel without authority to do so).

[20] 419 U.S. 449, 458 (1975).

[21] *Id*. at 469-70.

of "the basic proposition that all orders and judgments of courts must be complied with promptly" and that "[i]f a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."[22] "This does not mean, of course, that every ruling by a presiding judge must be accepted in silence," the court emphasized, because "[c]ounsel may object to a ruling . . . [which] alerts opposing counsel and the court to an issue so that the former may respond and the latter may be fully advised before ruling."[23] "But," the Court continued, "once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders," and it further cautioned that "[w]hile claims of error may be preserved in whatever way the applicable rules provide, counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply."[24]

It is from this cautionary language that Simon extracts his proposition that the District Attorney's office lacked "standing" to request reconsideration of the disqualification order. To the contrary, nothing in *Maness* (if even relevant) purports to prohibit a party from requesting a trial court to reconsider a prior order, let alone one involving the unique context of attorney disqualification. The Supreme Court's focus was merely to emphasize the "basic proposition" that parties should comply with court orders while they remain in effect. To the extent Simon is accusing the District Attorney's office of having violated the disqualification order merely by seeking reconsideration of it, we note that his disqualification motion (and, in turn, the prior order granting

---

[22] *Id.*

[23] *Id.* at 459.

[24] *Id.*

8

it) was addressed to the office's "prosecuting [of] the case," not the district attorney's efforts to challenge the order itself.[25]

But Simon's argument also fails for a more fundamental reason—even if the District Attorney's office lacked "standing" or proper authority to file its motion requesting reconsideration of the disqualification order, it would remain that the *district court* possessed plenary power and discretion to reconsider the order, just as with any interlocutory order, and that authority does not hinge on the issue being raised through proper motion.[26] Consequently, any question regarding the District Attorney's authority to request reconsideration is ultimately inapposite.

That different *presiding judges* issued the district court's two orders relating to disqualification does not change the analysis. Once a visiting judge has been assigned to a case, that judge possesses "all the rights, duties, and powers of the presiding judge."[27] Moreover, to the extent

---

[25] *See Eidson*, 793 S.W.2d at 3 n.2 (similarly rejecting assertion that disqualified district attorney "participated in the prosecution" by helping State "prepare for the Motion to Disqualify"; observing that motion involved "legal issues only" and that State's response to motion "in no way contributed to the prosecution of appellant, but only determined who might be prosecuting him from then on").

[26] *See Kirk v. State*, 454 S.W.3d 511, 514-15 & n.20 (Tex. Crim. App. 2015); *Black v. State*, 362 S.W.3d 626, 634-36 & n.39 (Tex. Crim. App. 2012); *Rodriguez v. State*, 852 S.W.2d 516, 520 (Tex. Crim. App. 1993); *State v. Johnson*, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991); *see also Martinez v. State*, 336 S.W.3d 338, 342 (Tex. App.—San Antonio 2010, no pet.) (concluding that trial court should not be "chained to erroneous rulings until a party urges reconsideration" and holding that trial court has right to reconsider its rulings sua sponte); *Hughen v. State*, 265 S.W.3d 473, 479 (Tex. App.—Texarkana 2008), *aff'd*, 297 S.W.3d 330 (Tex. Crim. App. 2009) ("A trial court has plenary jurisdiction to reconsider its interlocutory rulings, like that at bar, and retains that ability until a final judgment or order is entered in the cause and the decree becomes final.").

[27] Tex. Gov't Code § 74.056(c); *see id*. § 74.059(a) ("A judge assigned under the provisions of this chapter has all the powers of the judge of the court to which he is assigned."); *Moore v. State*, 999 S.W.2d 385, 400 (Tex. Crim. App. 1999) (holding that visiting judge assigned to case "was legally entitled to conduct duties that otherwise would have been assigned to" presiding judge); *Alexander v. State*, 903 S.W.2d 881, 883 (Tex. App.—Fort Worth 1995, no pet.) ("It is . . .

9

Simon's complaint is with Judge Leonard's participation in particular, he has failed to show harm. When there has been an intervening change in the presiding judge of a court whose order is challenged by mandamus, we abate the mandamus petition to give the successor judge an opportunity to rule on the underlying issue.[28] Accordingly, if as Simon urges, Judge Leonard had a ministerial duty to refrain from reconsidering the prior disqualification order signed by Judge Carnes and thereby relegate the District Attorney to seeking mandamus from the prior order, the issue would have returned to Judge Leonard for reconsideration anyway.

In sum, Simon has failed to demonstrate that the district court lacked authority to reconsider its disqualification of the District Attorney. Accordingly, Simon has no clear right to relief on that basis.

**Disqualification**

We now consider whether the district court had a ministerial duty in regard to the merits of the disqualification issue. For the district court to have such a duty here, disqualification of the entire District Attorney's office must have been the "one rational decision" that the

---

well-established that a retired judge sitting by administrative assignment possesses all the powers of the court to which he is assigned."); *see also Creek v. State*, No. 11-13-00009-CR, 2015 Tex. App. LEXIS 552, at *11 (Tex. App.—Eastland Jan. 22, 2015, pet. ref'd) (mem. op., not designated for publication) ("Qualified visiting judges possess the same powers as the judge of the court to which the judge is assigned."); *Anuscewski v. State*, No. 03-12-00655-CR, 2013 Tex. App. LEXIS 7621, at *4 (Tex. App.—Austin June 25, 2013, no pet.) (mem. op., not designated for publication) (explaining that retired judge who had been assigned to case following trial "had the same authority to sign the written judgment as would the judge who presided over the trial").

[28] *See* Tex. R. App. P. 7.2(b).

district court could have made "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."[29] For at least the following reasons, we cannot conclude that disqualification of the entire office was that sort of decision.

For one, it is not well-settled that the district court had the authority to disqualify the District Attorney under these circumstances. "A trial court has limited authority to disqualify an elected district attorney and [his] staff from the prosecution of a criminal case."[30] "The office of a district attorney is constitutionally created and protected; thus, the district attorney's authority 'cannot be abridged or taken away.'"[31] Moreover, the Code of Criminal Procedure provides that the district attorney "shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely."[32] Consequently, a trial court's authority to disqualify a district attorney in a particular case has been limited to situations in which the district attorney's prosecution of the defendant would result in a due-process violation.[33] The Court of Criminal Appeals has identified two situations in which a due-process violation would arise. First, "[i]f a prosecuting attorney has formerly represented the defendant in the 'same' criminal matter as that currently being prosecuted," he is "automatically

---

[29] *Weeks*, 391 S.W.3d at 122.

[30] *Buntion v. State*, 482 S.W.3d 58, 76 (Tex. Crim. App. 2016).

[31] *Id*. (quoting *Landers*, 256 S.W.3d at 303-04).

[32] Tex. Code Crim. Proc. art. 2.01.

[33] *See Landers*, 256 S.W.3d at 304 (citing *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994)).

11

disqualified" from prosecuting the defendant, "even without a specific showing of prejudice."[34]

Second, if a prosecuting attorney has previously represented the defendant in a different matter, he is disqualified from prosecuting the defendant "only when the defendant can establish 'actual prejudice' not just the threat of possible prejudice to his rights by virtue of the district attorney's prior representation."[35] "Actual prejudice would occur, for example, if: (1) [t]he prosecuting attorney has previously personally represented the defendant in 'a substantially related matter'; and (2) [t]he prosecuting attorney obtained 'confidential' information by virtue of that prior representation which was used to the defendant's disadvantage."[36] In this context, "confidential information" refers to "both privileged and unprivileged client information which the prosecutor learned by virtue of the former attorney-client relationship, but it excludes information that is generally known."[37]

As Simon has acknowledged both here and below, these holdings to date have not been extended beyond the prior-representation scenario. Consequently, Simon admits, he must "extrapolate" or analogize this line of cases to the present scenario, which involves prosecutors' receipt of alleged defense work product from an independent source. Simon urges us to deem that disclosure the legal equivalent of the District Attorney having formerly served on his defense

---

[34] *Id*.

[35] *Id*. at 304-05.

[36] *Id*. at 305.

[37] *Id*. at 307-08. As the Court of Criminal Appeals observed, the "exclusion of 'generally known' information makes sense. If the client information is a matter of public record or is already generally known to other people, then the expectation of harm resulting from the prosecutor's subsequent use of the information is small." *Id*. at 308.

team in this case, a per se ground for disqualification.  By definition, such extrapolation falls short of demonstrating that disqualification of the District Attorney is the "one rational decision" that the district court could have made "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."[38]  Nor has Simon demonstrated the sort of actual prejudice that would constitute a due-process violation.  The evidence before the district court consisted solely of the reporter's record from the ex parte hearing before Judge Stubbs.  Without divulging the contents of this record, it is very brief and considerably more innocuous than Simon suggests.  On this limited record, we cannot conclude that the district court could only rationally have found a due-process violation at this juncture.

Moreover, even if the district court had the mandatory duty to disqualify the District Attorney or Mr. Bunyard under these circumstances, it is not well-settled that the district court would also be required to disqualify all other personnel in the office.  In *State ex rel. Eidson v. Edwards*, a plurality of the Court of Criminal Appeals concluded that trial courts had "no authority" to enforce violations of disciplinary rules "by disqualifying an entire prosecutorial office."[39]  Although the Court of Criminal Appeals has since clarified that disqualification is required when a defendant's due-process rights have been violated,[40] the Court of Criminal Appeals has

---

[38] *See Young*, 236 S.W.3d at 211-13 (concluding that appellate court's grant of mandamus relief ordering disqualification of prosecutor was inappropriate in case where appellate court was "unable to identify any definitive, well-settled, and unequivocal legal authority . . . that indisputably governs the instant factual scenario"; observing that although appellate court's analysis regarding disqualification "may well ultimately prove the appropriate rule of law in criminal cases, it [was] not the only rational alternative" that trial court could have chosen).

[39] 793 S.W.2d 1, 6-7 (Tex. Crim. App. 1990).

[40] *See Pirtle*, 887 S.W.2d at 927 ("A trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due process violation.").

never held that an entire district attorney's office must be disqualified under those circumstances. Although some of our sister courts have held or presumed that a disqualification ground applicable to a district attorney can or must be imputed to his or her office,[41] this Court has never done so. More important, "clear, binding precedent" from the Court of Criminal Appeals remains lacking.[42] In the absence of such authority, Simon has not shown himself entitled to mandamus relief.

---

[41] *See, e.g.*, *In re Ligon*, 408 S.W.3d 888, 896 (Tex. App.—Beaumont 2013, orig. proceeding); *Marbut v. State*, 76 S.W.3d 742, 748-49 (Tex. App.—Waco 2002, pet. ref'd); *State ex rel. Sherrod v. Carey*, 790 S.W.2d 705, 708 (Tex. App.—Amarillo 1990, orig. proceeding). These cases all rely on an older case, *State v. May*, 270 S.W.2d 682 (Tex. Civ. App.—San Antonio 1954, no writ) (per curiam), in which the San Antonio Court of Appeals held that the trial court did not abuse its discretion in disqualifying an assistant district attorney when the District Attorney had been disqualified. *Id*. at 684. The court reasoned that "it would seem that if the District Attorney was disqualified, his assistant, who was appointed by him and who serves at his will and pleasure, would also be disqualified." *Id*. at 684. Accordingly, the court concluded that "the District Judge *in the exercise of his discretion* could properly reject the services of an appointee of the disqualified District Attorney." *Id*. at 684 (emphasis added). Thus, *May* appears to stand for the proposition that the district court has discretion to disqualify an assistant district attorney if the District Attorney has been disqualified, but not that the district court must do so.

[42] In *Eidson*, a plurality of the Court of Criminal Appeals noted that "when the individual attorney is separated from any participation on matters affecting his former client, 'vicarious disqualification of a government department is not necessary or wise.'" 793 S.W.2d at 6 n.6 (quoting The American Bar Association's Committee of Professional Ethics, Formal Opinion No. 342, 62 A.B.A.J. 517 (1976)). However, the plurality appeared to be referring to a situation in which an assistant district attorney, rather than the District Attorney himself, has been disqualified. The dissenting opinion in *Eidson* expressed skepticism that a Chinese Wall could be successfully erected in a District Attorney's Office. *See id*. at 14 (Teague, J., dissenting). But the dissent decided to "save writing on 'The Chinese Wall Defense' in a case until the defense was established on the record and the record also showed that the defense had been fully complied with," concluding that "[w]e have neither in the record of this cause." *Id*. In no case since *Eidson* has the Court of Criminal Appeals addressed this issue.

14

## CONCLUSION

Because Simon has failed to demonstrate a clear right to relief from the district court's order, we deny the petition for writ of mandamus.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Filed:   June 22, 2016

15